**E-FILED on**    12/1/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MAI THI VU,<br><br>            Petitioner,<br><br>     v.<br><br>TINA HORNBEAK, Warden et al.,<br><br>            Respondents. | No. C-07-3005 RMW<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS<br><br>**[Re Docket No. 1]** |

### I. BACKGROUND

Mai Thi Vu petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The court has reviewed the papers, and the underlying record.  For the reasons stated below, the petition for writ of habeas corpus is denied.

**A.     Procedural Background**

On August 10, 2004, the Superior Court of Santa Clara County convicted petitioner of five counts: (1) stalking pursuant to Penal Code § 646.9(a); (2) threatening great bodily injury pursuant to Penal Code § 4222; (3) stalking while a restraining order was in effect pursuant to Penal Code § 12022.1; (4) contribution to the delinquency of a minor pursuant to Penal Code § 272(a)(1); and (5) solicitation of another to commit assault with a deadly weapon pursuant to Penal Code § 653(f)(a). On December 21, 2004, petitioner was convicted of all charges and sentenced to seven years in

1  prison. Petitioner appealed, and the state appellate court affirmed the judgement in a reasoned
2  opinion on March 28, 2006. The California Supreme Court summarily denied a petition for review
3  on June 14, 2006. Petitioner pled the instant habeas petition on June 8, 2007.

### B.   Factual Background

In August 2000, petitioner separated from her husband Viet Vu ("Mr. Vu"). RT 1175. After the separation, Mr. Vu began seeing the victim, Kenya Kim ("Kim"), a local hairdresser. RT 1175, 1178. Over the next few months, Kim and Mr. Vu began to have feelings for each other and talked over the phone frequently. RT 1066, 1178-79. Later that year, Mr. Vu got a job in Florida and moved there for work. RT 1178-79. During that time Kim visited Mr. Vu twice, and six months later when Mr. Vu returned to California the two continued their relationship. RT 1078, 1177-78, 1181-83. In August 2001, petitioner called Kim asking about the nature of Kim's relationship with her estranged husband, Mr. Vu. RT 1066-67. Petitioner then began calling Kim incessantly, yelling and threatening Kim because of her relationship with Mr. Vu. RT 1066-67.

Between August and September of 2001, Kim received flowers from an unidentified person anonymously sent to her home. RT 1070-71. The delivery man became familiar to Kim after multiple deliveries. *Id*. Two weeks later Kim saw the flower delivery man sitting with petitioner in a car outside Kim's salon. RT 1072. In October 2001, Mr. Vu came to Kim's salon for a haircut. Petitioner found out and went to Kim's home and warned her not to cut Mr. Vu's hair; petitioner threatened to hire a man to throw acid on Kim and threatened to cut off Kim's arm. RT 1067, 1073-74, 1095, 1197-1200. Although frightened, Kim continued her intimate relationship with Mr. Vu. RT 1075-76. In January 2002, petitioner entered Kim's hair salon and threatened to have Kim's arm chopped off. RT 1079, 1211. Two days after the restraining order hearing, Kim was told petitioner had again entered her salon and looked through her appointment book. RT 1081. On March 22, 2002, Kim obtained a restraining order against petitioner. RT 1081, 1104-05.

In the course of the next few months several events took place. In May 2002, Kim found her car vandalized and threatening anonymous letters left on the car. RT 1108-14. Between March and April there were four more incidents of tire-slashing. *Id*. In February 2003, Kim received a call, where an anonymous caller threatened Kim that if she kept seeing Mr. Vu, petitioner could pay

someone to shoot Kim, inject her with HIV, or throw acid on her. RT 1124-1125. That same month Kim also received a call from petitioner's son, Michael who said to Kim, "Hello bitch." RT 1127-29. Petitioner's son testified his mother took him to a pay phone to call Kim and swear at her. RT 1774.

On March 19, 2003, Kim was followed by two men in two separate cars whom Kim believed had been hired by petitioner. RT 1135-37. On August 9, 2003, Kim saw petitioner outside her salon. Later, on August 23, 2003, Kim saw petitioner drive by her salon repeatedly. RT 1142-43. At petitioner's trial, Hien Ngoc Hoang testified that petitioner offered him $10,000 to beat up Kim and break Kim's legs; petitioner offered $20,000 upon completion of the assault. RT 1380, 1383-1390.

Denver Moore testified that petitioner had retained his private detective agency, Denver B. Moore Investigations, to investigate Kim in March 2003. RT 1424-1426. In the documents there was a form question asking the client if there was any restraining order in effect against the client, and the answer "not" was filled out next to this question. *Id*.

Rosie Marabal met petitioner in September 2003, and petitioner contacted her in early 2004 and asked Marabal to shoot Mr. Vu, offering Marabel between $10,000 and $20,000. RT 1725-28. On November 16, 2004, Marabal went to the police and told them of the arrangement with petitioner. RT 1732, 1745.

**C.     Legal Claims**

Petitioner asserts a single claim for habeas relief: that petitioner's federal constitutional right to confront witnesses against her were violated when the trial court, through testimony of Denver Moore, admitted People's 25, a retainer agreement showing petitioner hired Denver Moore's investigative services. This retainer agreement was used to prove petitioner was stalking Kim in violation of a court order restraining her from such conduct.

## II. ANALYSIS

**A.     Legal Standard**

This court may entertain a petition for writ of habeas corpus "[o]n behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation

of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, while the second prong applies to decisions based on factual determinations. *Williams v. Taylor*, 529 U.S. 362, 384-86 (2000)*; Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The federal court on habeas review may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. *Id.* at 411.

A federal court making the "unreasonable application" inquiry should ask whether the state court's application of federal law was "objectively unreasonable." *Id.* at 410. The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Rhoades*, 354 F.3d 1101, 1109 (9th Cir. 2004). The court must be left with a firm conviction that the determination made by the state court is wrong and the one urged by petitioner is correct. *Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000) (quoting *Van Tran v. Lindsey*, 212 F.3d 1143, 1153-54 (9th Cir. 2000)). In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to

the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

### B. Petitioner's Hearsay Evidence Claim

As grounds for federal habeas relief, petitioner asserts that Moore's testimony regarding the authenticity and contents of People's 25 did not establish the elements required by California Evidence Code section 1271, and consequently the business records exception to the hearsay evidence rule was not met. Petition at 9. People's 25 was a retainer agreement executed by petitioner when she hired Denver Moore's investigative service agency. The retainer agreement demonstrated petitioner's violation of her restraining order and continued pursuit of Kim. Moore, the owner of the agency, testified at trial that he had no contact with petitioner when the agreement between Moore's agency and petitioner was drafted. RT 1415. Despite this, through Moore the prosecutor offered into evidence a fax copy of the retainer agreement between the agency and petitioner. RT 1424. Petitioner objected to the testimony as insufficient to establish that the fax of the pages constituted a contract. Petition at 6. Over defense's objection Moore testified as to the contents of People's 25. At trial, Moore brought a sample of the kind of papers that "we go over with the client at the time of their retaining us." However, Moore did not submit the original business documents to the trial court. RT 1417. Petitioner argues that Moore could not testify about the fax since he never talked to petitioner, and he was not custodian of the company records. Petition at 16. Petitioner further asserts that Moore could not testify about the method of production of the original retainer agreement or the production of the faxed copy of the original document. *Id*. According to petitioner, Moore should only have been allowed to testify that this fax appeared to be the fax. *Id*. Under these facts, petitioner contends that introduction of People's 25 was an abuse of discretion and a violation of petitioner's right of confrontation guaranteed by the Sixth and Fourteenth Amendments of the federal Constitution. *Id.* at 9, 16.

### C. Admission of People's 25 as Business Records

#### 1. Standard for Admission of Evidence

A person in custody pursuant to the judgment of a state court can obtain a federal writ of habeas corpus only on the ground that he is in custody in violation of the Constitution or laws or

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS—No. C-07-3005 RMW
AKT                                             5

treaties of the United States. 28 U.S.C. § 2254(a). "A violation of state evidence rules is insufficient to constitute a due process violation." *Randolph v. California,* 380 F.3d 1133, 1147 (9th Cir. 2004). This court must determine "whether the admission of evidence rendered the trial so fundamentally unfair as to violate due process." *Id.* In order to grant relief, this court must find that the absence of fairness fatally infected the trial; the acts complained of must be of such quality that they necessarily prevented a fair trial. *Id.*

In order to obtain habeas relief on the basis of an evidentiary error, a petitioner must show that the error was one of constitutional dimension and that it was not harmless. *Brecht v. Abrahamson,* 507 U.S. 619, 640 (1993). Accordingly, even if People's 25 was improperly admitted under California Evidence Code section 1271, this standing alone, is not sufficient for habeas relief. *See Estelle v. McGuire,* 502 U.S. 62, 67 (1991) (rejecting the Ninth Circuit's reliance on conclusion that evidence was "incorrectly admitted . . . pursuant to California law" as a basis for federal habeas corpus relief). Petitioner is required to show that the error had "'a substantial and injurious effect' on the verdict." *Dillard v. Roe,* 244 F.3d 758, 767 n. 7 (9th Cir. 2001) (quoting *Brecht,* 507 U.S. at 623).

### 2.     **Admission of People's 25 Is Objectively Reasonable**

The trial court has wide discretion in determining whether evidence is admissible and its determination must not be disturbed on appeal unless there is a clear showing that the court abused its discretion. Cal. Const. Art. VI, § 13; Evid. Code, §§ 352-354; *People v. Hernandez*, 55 Cal. App. 4th 225, 239-40 (1997). The business records exception provides:

> Evidence of a writing made as a record of any act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if: [¶] (a) The writing was made in the regular course of a business; [¶](b) The writing was made at or near the time of the act, condition, or event; [¶] (c) The custodian or other qualified witness testifies to its identity and the mode of preparation; and [¶] (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness.

Cal. Evid. Code § 1271. The trial court has broad discretion in determining whether a party has established these foundational requirements. Thus, a reviewing court may overturn the trial court's exercise of discretion only upon a clear showing of abuse of discretion. *People v. Martinez,* 22 Cal. 4th 106, 120 (2000).

United States District Court
For the Northern District of California

The reasonableness of a state court's decision is assessed in light of the record the state court had before it. *Holland v. Jackson,* 542 U.S. 649, 652 (2004). Here, the foundation for admitting People's 25 under the business records exception was established when Moore testified that (1) he was the principal owner and operator of his agency, RT 1416; (2) People's 25 was kept in the ordinary course of business upon retention of the agency, RT 1416-1417; (3) the agency normally filled out retainer agreement forms at the time the agency met with the client, *id.*; (4) the agency executed a regular protocol when filling out the retainer agreement forms, RT 1429-1431; (5) once signed, retainer agreements are put in a manila folder and filed in an active file in the intake office, RT 1434-1435; and (6) Moore had instructed an employee to fax petitioner's agreement to a Southern California police detective, RT 1435-1439. This testimony provided adequate proof that the document referred to as People's 25 was an accurate and trustworthy copy of the retainer agreement. Therefore, proper foundation was laid, and the trial court's conclusion that the documents were properly filled out and kept in the regular course of business was not an abuse of discretion. Specifically, the trial court explained:

> [I] think that the witness has certainly testified that the documents in the People's 25 are ordinarily filled out, as he said, 99 percent of the time, they're filled out in the regular course of business at the time of the client retention . . . I think that a foundation has been laid that these, in fact, were documents kept in the regular course of business. And I'm going to accept them as business records, overruling the hearsay objection to the documents.

RT 1442.

Foundation for admitting records under Evidence Code section 1271 is properly laid if, in the opinion of the trial court, sources of information and method and time of preparation were such as to qualify for admission. *People v. Crosslin,* 251 Cal. App. 2d 968, 975-76 (1967). In *Crosslin*, defendant contended that a fingerprint card was inadmissible evidence on the ground that the foundation for its admission was improper because the person who actually took defendant's fingerprint was not called as a witness. However, the California Court of Appeal found that since the fingerprint card was verified, the fact that the person who actually took defendant's fingerprints was not called as a witness was immaterial. *Id.* at 976.

Likewise, in the instant case, although the prosecution did not call the agency employee who actually created, faxed, or kept the retainer agreement as a witness, Moore, as a principal owner and

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS—No. C-07-3005 RMW
AKT                                                                  7

1  operator of his agency, testified that People's 25 was a standard contract that his agency used and
2  kept in the regular course of business.  Given the trial court's broad discretion and no clear showing
3  of abuse of discretion, the court's decision to admit People's 25 as business record was not a
4  violation of petitioner's right to confront and cross-examine an adverse witness.  The trial court did
5  not deprive petitioner of her right to a fair trial.

### 3.      Harmless Error

Petitioner contends that People's 25 was crucial to establishing the stalking charge and petitioner's retention of investigators to stalk Kim while a restraining order was in effect against her. Petitioner also contends that People's 25 was devastating to petitioner and that the other evidence was merely circumstantial.  Petition at 17-18.  However, this court disagrees, finding that even if the trial court improperly admitted People's 25, the error was harmless under any standard.

Trial errors that occur during the presentation of the case to the jury are amenable to harmless-error analysis because they may be quantitatively assessed in the context of other evidence presented in order to determine their effect on the trial.  *Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993).  A federal habeas petitioner is not entitled to relief unless the trial error "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  The error must have resulted in actual prejudice.  *Id*.  Regardless of whether there is sufficient evidence to support the conviction apart from the error, the court must determine whether the error had a substantial and injurious effect or influence on the conviction.  If it did, the court must set aside the conviction.  *Ghent v. Woodford*, 279 F.3d 1121, 1127 (9th Cir. 2002).  To grant relief, a federal court must determine (1) that the state court's decision was "contrary to" or an "unreasonable application" of Supreme Court precedent; and (2) that the petitioner suffered prejudice under *Brecht* from the constitutional error. *Inthavong v. LaMarque,* 420 F.3d 1055,1059 (9th Cir. 2005).  The Ninth Circuit has interpreted "substantial or injurious effect" as meaning the petitioner would have received a more favorable result absent the error.  *Bains v. Cambra*, 204 F.3d 964, 971 n.2 (9th Cir. 2000).

In the present case, People's 25 was introduced to show petitioner had employed an investigative agency after Kim obtained a temporary restraining order against petitioner.  This

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS—No. C-07-3005 RMW
AKT                                                                        8

1 evidence is only relevant to corroborate the incident on March 19, 2003, when Kim was followed by
2 two individuals in two cars. However, as shown below, a number of other violations occurred after
3 the restraining order was issued on March 22, 2002, as well as between February 13 and August 23,
4 2003, the period set forth in Count III. Petitioner's retention of the investigation agency supported
5 already ample evidence of petitioner's guilt under both Count I and Count III.

6 On March 24, 2002, two days after the restraining order was issued, Kim noticed her car
7 scratched and three tires slashed. RT 1105-1107. A pair of Gucci sunglasses were found lying near
8 the car, and Kim had previously seen petitioner wearing Gucci sunglass. RT 1254. Shortly
9 thereafter, Kim's other car was vandalized. This time, two threatening anonymous letters were left
10 on the windshield, stating in part, "you really think that by stealing someone else property or
11 husband or lover, they would step away and let you have it. Keep on daydreaming." RT 1108-1109,
12 1111. Around February 15, 2003, Kim received a phone call threatening her that if she kept seeing
13 Mr. Vu, petitioner could pay someone to shoot her, or inject her with HIV, or throw acid on her. RT
14 1124-1125. On February 21, 2003, Kim received another phone call from petitioner's fifteen-year-
15 old son, Michael Vu, in which he greeted her with "Hello bitch." RT 1127-1129. On August 9,
16 2003, Kim saw petitioner stepping out from a café about three stores from Kim's salon. RT 1133-
17 1134. The moment petitioner saw Kim, petitioner ran back to the back door of the café. *Id*. On
18 August 23, 2003, Kim again saw petitioner as she slowly drove by her salon. RT 1142-1143. Kim
19 and petitioner looked at each other when petitioner drove by; then petitioner turned the car around.
20 *Id*. Kim was frightened and ran inside the salon to call the police. RT 1142. Petitioner did not
21 challenge any of these events on appeal.

22 Based on these facts, the court finds that People's 25 was only relevant to corroborate one
23 incident pertaining to Count III, the incident in March 2003 when Kim was followed by two men.
24 However, Count III involved a continuous course of events. It is therefore reasonable to conclude
25 that the effect of admitting People's 25 was neither substantial nor injurious in determining the jury's
26 verdict. Furthermore, petitioner was not prejudiced by the introduction of People's 25 because even
27 absent the evidence, it is unlikely petitioner would have been acquitted on Count I or Count III.
28

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS—No. C-07-3005 RMW
AKT                                                                9

Accordingly, even assuming the trial court mistakenly admitted People's 25 into evidence, the error in this case is harmless, and thus petitioner is not entitled to habeas corpus relief.

### III.  ORDER

For the foregoing reasons, the court finds that petitioner has failed to show any violation of her federal constitutional rights in the underlying state criminal proceedings.  Accordingly, the petition for a writ of habeas corpus is denied.

DATED:       11/25/09

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Petitioner:**
Nedra Ruiz                              nedra@pier5law.com

**Counsel for Respondent:**
No appearance

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**      12/1/09                                          CCL
                                                        **Chambers of Judge Whyte**